Richard F. Holley, Esq. (NV Bar No. 3077)
Email: rholley@nevadafirm.com
Mary Langsner, Ph.D. (NV Bar No. 13707)
Email: mlangsner@nevadafirm.com
HOLLEY DRIGGS
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:   702/791-0308
Facsimile:    702/791-1912
*Attorneys for PowerUp Lending Group, Ltd.; and EMA Financial, LLC*

E-filed on September 23, 2020

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>PHARMAGREEN BIOTECH, INC.,<br><br>Debtor. | Case No. 20-50780-BTB<br>Chapter 11<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS BANKRUPTCY CASE**<br><br>Date of Hearing:   September 30, 2020<br>Time of Hearing:   2:00 p.m.<br><br>Judge: Hon. Bruce T. Beesley |

PowerUp Lending Group, Ltd. ("PowerUp") and EMA Financial, LLC ("EMA") (collectively with PowerUp, "Creditors"), by and through their undersigned counsel Richard F. Holley, Esq. and Mary Langsner, Ph.D. of the law firm Holley Driggs, hereby file this Reply in Support of Motion to Dismiss Bankruptcy Case ("Reply"). The Reply responds to argument raised in the Opposition to Motion to Dismiss Bankruptcy [ECF No. 40][1] ("Opposition") filed by debtor Pharmagreen Biotech, Inc. ("Debtor"). The Reply is also submitted in furtherance of Creditors' Motion to Dismiss Bankruptcy Case [ECF No. 32] ("Motion"), which Motion asks this Court to dismiss the Debtor's Bankruptcy Case.

This Reply is supported by the Memorandum of Points and Authorities herein; the pleadings and papers on file in the Bankruptcy Case, judicial notice of which, and of the Docket, is respectfully requested pursuant to Fed. R. Evid. 201(b) and (c) and 1101(a) and (b); the

---

[1] All references to "ECF No." are to the numbers assigned to the documents filed in the bankruptcy case identified in the caption above ("Bankruptcy Case") as they appear on the docket ("Docket") maintained by the Clerk of the Court of the United States Bankruptcy Court for the District of Nevada.

14280-01/2503000_4.docx

Supplemental Declaration of Mary Langsner, Ph.D. filed concurrently herewith pursuant to Local Rules of Bankruptcy Practice of the United States District Court for the District of Nevada ("LR") 9014(c) ("Langsner Decl."); and any oral argument the Court may entertain at hearing on the Motion.

Dated this 23rd day of September 2020.

**HOLLEY DRIGGS**

 /s/ Mary Langsner
Richard F. Holley, Esq. (NV Bar No. 3077)
Mary Langsner, Ph.D. (NV Bar No. 13707)
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
*Attorneys for PowerUp Lending Group, Ltd.; and EMA Financial, LLC*

**MEMORANDUM OF POINTS AND AUTHORITES**

**I.    INTRODUCTION**

The written testimony proffered by Debtor's principal Mr. Peter Wojcik ("Mr. Wojcik") in support of the Opposition lacks credibility and contradicts statements made in a written filing he signed on the Debtor's behalf with the Securities and Exchange Commission ("SEC") in May of 2020 under criminal penalties.[2]  To now testify that the Debtor has no immediate plans to engage in business operations having to do with cannabis, but ultimately will grow cannabis after the Bankruptcy Case is concluded, is more a matter of convenience than actual fact.  The Debtor has already sworn under criminal penalties in its 10-Q that it has been prosecuting a cannabis licensure application through its wholly owned subsidiary WFS Pharmagreen, Inc. ("WFS") since early 2018.  *See* ECF No. 33 p. 24 of 40.  And the Debtor's website touts the Debtor's efforts to develop cannabis-based business operations that are not limited to Canada.  *See* **Exhibits "2", "3", and "4"** to Langsner Decl., ECF No. 33 pp. 32-39 of 40 (from **Ex. 4**: "to deliver laboratory based

---

[2] The Debtor's Form 10-Q Quarterly Report for the period ending March 31, 2020 ("10-Q"). The 10-Q is in the record at ECF No. 33 pp. 4-31 of 40, as **Exhibit "1"** to the Declaration of Mary Langsner, Ph.D. in support of Motion to Dismiss Bankruptcy Case (herein, "Langsner Decl.").

- 2 -

14280-01/2503000_4.docx

services to the North American Cannabis and agriculture sectors."), but focus on operations in the United States.

The new gloss on the Debtor's narrative, by way of sworn affidavit testimony concerning anticipated funding,[3] does little to change the longstanding representations of the Debtor concerning its business plan involving the cannabis industry. Specifically, if the Debtor has no current or ongoing operations, and does not plan to capitalize on developing cannabis plantlets, it is severely questionable that it has the ability to actually raise these funds if the funds are not going to be tied to the very business plan described to the SEC. And the Debtor proffers no other evidence to suggest that the anticipated funding is disconnected from the original business plan of cultivating, producing, and (eventually) selling marijuana products in North America. In summary, while the Debtor is not currently and actively engaged in business of any sort, the Debtor's business model is clearly based on cannabis operations in the United States.

## II.    ANALYSIS

### A.    The Debtor's Bankruptcy Case Must Still Be Dismissed.

The statements in the Wojcik Affidavit are not supported by any other evidence of record and are further contravened by the Debtor's own pending application with Canadian authorities for a cannabis license (testimony at the Debtor's § 341 meeting of creditors ("341 Meeting") by Mr. Wojcik confirms the application remains pending). The Debtor has previously testified under criminal penalty to the SEC regarding its intention to cultivate, produce, and sell marijuana products to the North American (not just Canadian) market—and it made steps toward this goal by applying for cannabis licensure. The current position now articulated in the Opposition regarding the scope and timing of Debtor's business operations simply lacks credibility and is undermined by the previous steps taken by the Debtor to ensure it may capitalize on the North American cannabis market and sworn statements to the contrary—and, the Debtor should be estopped from claiming anything contrary to what is stated in its 10-Q filed with the SEC. Moreover, it is further indication that the Debtor's principal keeps altering the Debtor's narrative

---

[3] *See* Mr. Wojcik's affidavit submitted in support of the Opposition, ECF No. 40 p. 5 of 6 ("Wojcik Affidavit"), at ¶¶ 3-6.

to address the current problem regarding whether the Debtor is qualified to be a debtor in bankruptcy; this is made more apparent in that the current testimony (in the Wojcik Affidavit) is not supported by any other proffered evidence.

Taking one step back from the Wojcik Affidavit, the Debtor's current narrative concerning the nature and extent of its business operations, as well as its intended business operations concerning cannabis, are more grounded in convenience than in actual fact. A review of the 10-Q and the Debtor's website demonstrate that the thrust of the Debtor's business plan is to be an international supplier of marijuana plantlets for at least North American operations, with the possibility of expanding elsewhere. At the 341 Meeting, Mr. Wojcik testified that he had been advised by European investment bankers that the Debtor will be unable to raise money as long as it is in bankruptcy and to hold off from participating in a bond offering to raise the funds needed to build Debtor's structures (where marijuana and hemp plants will be cultivated and produced) until after the Bankruptcy Case is completed. Yet the Debtor would now have one believe the testimony in the Wojcik Affidavit that the Debtor has an opportunity to procure funding sufficient to repay all creditors (including unsecured creditors) *without* participating in the cannabis business. It defies logic that the Debtor will not be following through with its original business plan and that it will also succeed by *not* engaging in the very business it identified as that which will propel it into the forefront of the global market. The notion that the Debtor will now be able to raise an extraordinary amount of money[4] for a business plan that is less than what was stated to the SEC and that is markedly different from that identified on Debtor's website is not credible. Moreover, the Debtor does not explain how it will even be possible to raise money for a business that is *not* premised on cannabis operations but has a pending cannabis license application in Canada. It simply defies logic that the Debtor would now be able to shift gears so significantly from the details provided in its SEC filing, to now obtain funds to support its business *without* engaging in cannabis cultivation, production, and distribution (as originally intended). Importantly, the Debtor has not submitted any evidence from any alleged financial source that it

---

[4] Testimony at the 341 Meeting indicated approximately thirty million dollars.

- 4 -

14280-01/2503000_4.docx

1   is willing to provide financing on a pared-back business model, or at a time when the Debtor has no ongoing business operations.

2   The Wojcik Affidavit's testimony that the Debtor has no ongoing cannabis operations but has plans to ultimately engage in the cannabis business is self-serving. The Debtor's sworn testimony in Schedules and Statements filed with this Court is that it has a little over three hundred dollars in assets—so, the affidavit's selective reference to having no *cannabis* operations is not quite the full portrait. The 341 Meeting testimony confirms that there are no ongoing operations, period, and that the Debtor must raise money in order to carry out its business plan. The Wojcik Affidavit swears that the business plan is to not engage in cannabis while in bankruptcy but to eventually engage in that market. Yet the contradiction is that the Debtor has applied for marijuana licensure in Canada, which application is pending, and the 341 Meeting testimony corroborates that the Debtor intends to ultimately utilize that license to carry out its intended business operations.

As a matter of convenience, the facts concerning business operations differ in the Wojcik Affidavit as opposed to the 10-Q filed under criminal penalty with the SEC. When the premise of operating a cannabis business that covered the North American (*i.e.*, more than just Canadian) markets was not an issue, the Debtor identified its business plan with the SEC as based primarily on cannabis cultivation and international sales. That business plan did not state that sales would be limited solely to the geographic region of Canada, nor did it state that the United States was not a primary focus.[5] Rather, now that the premise of operating a cannabis-based business is at issue (because the Debtor is in bankruptcy), the Debtor is attempting to create a new, albeit false, narrative concerning business operations and intended business operations. The testimony in the Wojcik Affidavit simply lacks credibility, and the alternating narrative it sets forth defies logic, contradicts previously sworn statements, and should not be believed.

---

[5] Item 1 of the 10-Q reads in part, "changed its principal business to the construction of a biotech complex in Deroche, British Columbia, Canada, for the purpose of producing a variety of starter plantlets **for the Canadian and international** high CBD hemp **and medical cannabis** industries . . . ." *see* **Ex. 1** to Langsner Decl., ECF No. 33 p. 13 of 40 (emphases added).

- 5 -

What is left in the record is the 10-Q and its statements made to the SEC under criminal penalty. Among them, the Debtor notes that it needs "to raise the capital necessary **to fund our business** . . ." *See* 10-Q at Item 2, **Ex. 1** to Langsner Decl., ECF No. 33 p. 23 of 40 (emphasis added). Even though it may be convenient to alter this narrative in the context of the Bankruptcy Case, the Wojcik Affidavit is unsupported by evidence indicating that the Debtor has actually altered its business plan or has the ability to raise money. It defies logic that the Debtor will reorganize, or pursue an alternate business plan outside of bankruptcy, that is contrary to what it has sworn is its means of going forward and making money, and the Debtor should be estopped from claiming anything contrary to what is stated in its 10-Q filed with the SEC. The Debtor cannot spin competing narratives and escape the inevitability that both narratives warrant dismissal of the Bankruptcy Case.

### III.  CONCLUSION

For the foregoing reasons, and based upon the points and authorities proffered in Creditors' Motion, as well as the evidence of record before the Court, Creditors respectfully request the Court grant the Motion and dismiss the Bankruptcy Case.

Dated this 23rd day of September 2020.

**HOLLEY DRIGGS**

 /s/ Mary Langsner
Richard F. Holley, Esq. (NV Bar No. 3077)
Mary Langsner, Ph.D. (NV Bar No. 13707)
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
*Attorneys for PowerUp Lending Group, Ltd.; and EMA Financial, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Holley Driggs, and that on the 23rd day of September 2020, I caused to be served a true and correct copy of REPLY IN SUPPORT OF MOTION TO DISMISS BANKRUPTCY CASE in the following manner:

☒ (ELECTRONIC SERVICE)  Under Local Rule 5005 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

☒ (UNITED STATES MAIL)  By depositing a copy of the above-referenced document for mailing in the United States Mail, first class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date above written.

> PHARMAGREEN BIOTECH, INC.
> PETER WOJCIK
> 2987 BLACKBEAR COURT
> COQUITLAM BC V3E 3A2
> CANADA

☐ (OVERNIGHT COURIER)  By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

☐ (FACSIMILE)  That I served a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those persons listed on the attached service list, on the date above written.

/s/ Olivia Swibies
An employee of Holley Driggs

14280-01/2503000_4.docx